# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| ULEMA ARRAZZAQ,<br>     Petitioner, | Case No. 1:13-cv-349 |
| | Dlott, J. |
| vs. | Bowman, M.J. |
| WARDEN, LONDON<br>CORRECTIONAL INSTITUTION,<br>     Respondent. | **REPORT AND<br>RECOMMENDATION** |

Petitioner, an inmate in state custody at the London Correctional Institution, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 6). This matter is before the Court on the petition and respondent's return of writ. (Docs. 6, 11).

## I. FACTUAL BACKGROUND

> Arrazzaq was parked in the parking lot of a motel when spotted by Hamilton County Deputy Sheriff Dan Bremerer. Bremerer saw Arrazzaq engaging in suspicious activity in the front seat--appearing to slouch to avoid being seen--and he also noticed that the car did not have a properly displayed front license plate. Bremerer testified that the motel is known as a hot spot for criminal activity. Bremerer waited for Arrazzaq to pull out of the parking lot, but lost sight of him shortly thereafter. Bremerer saw him about ten minutes later and, having run the plates, had learned that Arrazzaq was driving with an expired license.
>
> Bremerer initiated a traffic stop, and was soon joined by Deputy Stephen Boster. Although Bremerer had made the determination that he would have to do an inventory search of the car since Arrazzaq could not legally drive it from the scene, Boster asked for Arrazzaq's consent to search the vehicle. According to Boster, he asked Arrazzaq if he had a "problem with me looking inside your vehicle?" Boster said that Arrazzaq's exact response was "go ahead and do your thing." During the search, the deputies found crack cocaine and a handgun.

(Doc. 11, Ex. 13).

## II. PROCEDURAL HISTORY

### State Court Proceedings

On January 27, 2011, the Hamilton County, Ohio grand jury returned an indictment charging petitioner with one count each of trafficking in cocaine, possession of cocaine, carrying concealed weapons, and having weapons while under disability. (Doc. 11, Ex. 1). Through counsel, petitioner entered a plea of not guilty to the charges in the indictment.

On February 22, 2011, petitioner filed a motion to suppress all evidence obtained as a result of the traffic stop and the subsequent search and seizure of his vehicle. (Doc. 11, Ex. 2). Petitioner filed a second and third motion to suppress on May 18 and June 20, 2011. (Doc. 11, Ex. 3, 4). After a suppression hearing, the trial court overruled petitioner's motion to suppress. (Doc. 11, Ex. 5).

Petitioner subsequently waived his right to a jury trial, withdrew his original plea of not guilty, and entered a no contest plea. (Doc. 11, Ex. 5, 6, 7). The trial court accepted the plea and found petitioner guilty of all charges. (Doc. 11, Ex. 8). On December 21, 2011, petitioner was sentenced to an aggregate sentence of eight years of imprisonment. (Doc. 11, Ex. 9).

On December 16, 2011, through different counsel, petitioner filed a timely appeal to the Ohio Court of Appeals. (Doc. 11, Ex. 10). Petitioner raised the following assignment of error:

> The trial court erred in overruling Defendant's motion to suppress evidence seized from the vehicle he was operating at the time of his arrest.

(Doc. 11, Ex. 11). On September 26, 2012, the Ohio appellate court overruled petitioner's assignment of error, but found that the trial court failed to impose a mandatory driver's license suspension pursuant to R.C. 2925.03(D)(1). (Doc. 11, Ex. 13). The case was remanded for the "limited purpose of allowing the trial court to impose the required driver's license suspension."

*Id.* at 5. On January 9, 2013, the trial court entered a judgment entry *nunc pro tunc* including the driver's license suspension. (Doc. 11, Ex. 18).

Meanwhile, on October 26, 2012, petitioner filed a timely pro se appeal to the Ohio Supreme Court. (Doc. 11, Ex. 14). In his memorandum in support of jurisdiction, petitioner raised the following single proposition of law:

> The trial court erred in overruling Defendant's motion to suppress evidence seized from the vehicle he was operating at the time of his arrest.

(Doc. 11, Ex. 15). On January 23, 2013, the Ohio Supreme Court declined jurisdiction to hear petitioner's case and dismissed the appeal. (Doc. 11, Ex. 17).

## Federal Habeas Corpus

Petitioner filed the instant federal habeas corpus petition on June 13, 2013. (Doc. 6). Petitioner raises the following single ground for relief in the petition:

> **Ground One**: The trial court erred in overruling Defendant's motion to suppress evidence seized from the vehicle he was operating at the time of arrest.
>
> **Supporting Facts**: Courts must exclude contraband taken out of a vehicle, where the detention of the suspect exceeds the scope of the initial stop and subsequent search, which was not predicated upon any probable cause or reasonable articulable suspicion, but rather supposition and the fruits of a search under these terms is violative of the rights of a criminal so accused.
>
> Within this matter the sheriff deputies involved provided inconsistent testimony. This testimony was so inconsistent as to fail to meet any articulable standard for meeting and finding for probable cause to search the vehicle of the Petitioner. The testimony proffered by the officers does not go to indicate they determined and specifically determined at each stage, probable cause to continue to search and detain.
>
> This matter was processed by the deputies, as a felony stop; however, the guise utilized to effect the stop was merely a traffic stop. As such, since this was not a felony stop, and there was no basis to determine or find the expectations for the commission of a felony, then there existed no articulable basis for finding probable cause.

> The records within this matter indicate that specific and articulable facts which, taken together with any rational inferences from this matter, still did not reasonably warrant the intrusion. The police did not show or proffer evidence to indicate that they evaluated the facts and inferences to support the traffic stop, even when reviewing the matter through the eyes of a cautious police officer.
>
> Therefore, upon reviewing the matters herein the motion to suppress should have been granted, and the fruits of the search suppressed, based upon failure to ensure protection of rights under Fourth and Fourteenth Amendments to the United States Constitution.

(Doc. 6, p. 3).

Respondent argues that the petition should be denied. (Doc. 11). According to respondent, petitioner's sole ground for relief is not cognizable in federal habeas corpus.

### III. THE PETITION SHOULD BE DENIED

In this federal habeas case, the applicable standard of review governing the adjudication of the constitutional claims that were raised to and decided by the Ohio courts is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v.*

4

*Taylor,* 529 U.S. 362, 412-13 (2000)). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit recently explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court).  It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . . This is a "substantially higher threshold." . . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 131 S.Ct. at 786. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that

5

there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

The Supreme Court recently made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher,* __ U.S. __, 132 S.Ct. 38, 44 (2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). In *Greene*, 132 S.Ct. at 44, the Court explained:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. __, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.*, at __, 131 S.Ct. at 1398. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision*.'" *Id.*, at __, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . . .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] have already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010), *cert. denied,* 132 S.Ct. 127 (2011)). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of

6

the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

    **A. Petitioner's single ground for relief is not cognizable in federal habeas corpus.**

In Ground One petitioner contends that the evidence obtained though the search of his vehicle should have been suppressed because the search violated his rights under the Fourth and Fourteenth Amendments. (Doc. 6, p. 3).

Petitioner challenged the denial of his motion to suppress on appeal to the Ohio Court of Appeals, who overruled the assignment of error as follows:

> In his sole assignment of error, Arrazzaq claims that the trial court improperly denied his motion to suppress. In particular, he argues that the warrantless search of his vehicle was improper, that he did not voluntarily consent to the search, and that the search was not justified under the inventory exception to the warrant requirement. We conclude that the trial court properly denied the motion to suppress.
>
> Appellate review of a motion to suppress involves a mixed question of law and fact. *See State v. Burnside,* 100 Ohio St.3d 152, 2003–Ohio–5372, 797 N.E.2d 71, ¶ 8. When considering a motion to suppress, the trial court is the trier of fact and is in the best position to resolve factual questions and to evaluate the credibility of witnesses. *Id.* An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* The appellate court must then determine, without any deference to the trial court, whether the facts satisfy the applicable legal standard. *Id.*
>
> A search conducted without a warrant issued upon probable cause is per se unreasonable, subject to a few specifically established exceptions. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). One of those exceptions is a search conducted after the subject has given consent. *Id.*
>
> In this case, Deputy Boster testified that he had asked Arrazzaq if he could search the vehicle and that Arrazzaq had consented to that search. In contrast, Arrazzaq testified that he had told Boster that he did not have permission to search the vehicle. Arrazzaq testified that there had been no reason for the deputies to search the vehicle, and that he had not consented. He testified that the deputies searched the vehicle over his objections.

7

> So, in this case, the question becomes one of determining which version of events to credit. Matters as to the credibility of evidence are for the trier of fact to decide. *State v. Bryan,* 101 Ohio St.3d 272, 2004–Ohio–971, 804 N.E.2d 433, ¶ 116. This is particularly true regarding the evaluation of witness testimony. *State v. Williams,* 1st Dist. Nos. C–060631 and C–060668, 2007–Ohio–5577, ¶ 45, citing *Bryan, supra.* We will not reverse a decision because the trial court chose one credible version of events over another.
>
> Because the record supports the conclusion that Arrazzaq consented to the search of his vehicle, we conclude that the trial court properly denied his motion to suppress. While Arrazzaq also argued that the deputies conducted an improper inventory search of the vehicle, the record does not support this argument. The deputies testified that Arrazzaq consented to the search of the vehicle prior to their initiation of the inventory search.
>
> For the foregoing reasons, Arrazzaq's sole assignment of error is overruled.

(Doc. 11, Ex. 13, pp. 3-4).

The Supreme Court held in *Stone v. Powell*, 428 U.S. 465 (1976), that federal habeas courts are prohibited from addressing the merits of Fourth Amendment claims brought by state prisoners if the prisoner had a full and fair opportunity to litigate such a claim in the state courts and the presentation of the claim was not thwarted by any failure of the State's corrective process. *Stone,* 428 U.S. at 494–95. The Sixth Circuit has developed a two-step inquiry to assess whether *Stone* applies to preclude federal habeas review of Fourth Amendment claims. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982); *see also Machacek v. Hofbauer,* 213 F.3d 947, 952 (6th Cir. 2000). Under that inquiry, the federal habeas corpus court must determine (1) whether the State has provided a procedural mechanism through which, in the abstract, the petitioner could raise a Fourth Amendment claim, and (2) whether the petitioner's presentation of the Fourth Amendment claim was in fact frustrated because of a failure of that mechanism. *Id.*

In *Riley,* the Sixth Circuit held that by providing for the filing of a pretrial motion to suppress and the opportunity to directly appeal any ruling denying a suppression motion, Ohio

8

has a mechanism in place for the resolution of Fourth Amendment claims, which "is, in the abstract, clearly adequate." *Riley,* 674 F.2d at 526; *see also Loza v. Mitchell,* 705 F. Supp.2d 773, 860 (S.D. Ohio 2010). Therefore, the determination whether *Stone* applies turns solely on the resolution of the second *Riley* inquiry. *See Hillman v. Beightler,* No. 5:09-cv-2538, 2010 WL 2232635, at *5 (N.D. Ohio May 26, 2010).

Courts have consistently held that the "relevant inquiry" in resolving the second question posed in *Riley* is whether the "habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided" by the state courts. *Wynne v. Renico,* 279 F. Supp.2d 866, 892 (E.D. Mich. 2003) (citing *Ortiz–Sandoval v. Gomez,* 81 F.3d 891, 899 (9th Cir. 1996)).[1]

> As long as a state prisoner has had an opportunity to litigate his Fourth Amendment claims by means of procedures that are "suitably crafted" to test for possible Fourth Amendment violations, a federal habeas court does not have the power, under *Stone,* to "second-guess the accuracy of the state courts' "resolution of those claims." Thus, a "mistaken outcome" of a suppression hearing that has been conducted in a state trial court, standing alone, does not deny a habeas petitioner's opportunity to fully and fairly litigate his Fourth Amendment claims. . . . Thus, even "potentially meritorious Fourth Amendment claims" are barred by *Stone* on habeas review if the petitioner had a full and fair opportunity to litigate his claims in the state courts.

*Id.* (quoting *Sanna v. Dipaolo,* 265 F.3d 1, 8–9 (1st Cir. 2001), and *Deputy v. Taylor,* 19 F.3d 1485, 1491 (3rd Cir. 1994)); *see also Hillman, supra,* 2010 WL 2232635, at *5 (quoting *Cabrera v. Hinsley,* 324 F.3d 527, 531–32 (7th Cir. 2003)) ("Absent a subversion of the hearing process, we will not examine whether the judge got the decision right. . . . '[F]ull and fair' guarantees the right to present one's case, but it does not guarantee a correct result."); *Brown v. Berghuis,* 638

---

[1] The district court later supplemented its opinion in *Wynne* on another issue, which was determined to be sufficiently meritorious to justify the granting of a conditional writ of habeas corpus. *See Wynne v. Renico,* 595 F. Supp.2d 775 (E.D. Mich. 2009). Thereafter, the Sixth Circuit reversed the district court's revised judgment granting habeas corpus relief based on that other ground; the Supreme Court recently denied certiorari review of *Wynne v. Renico,* 606 F.3d 867 (6th Cir.), *cert. denied,* 131 S.Ct. 2873 (2011).

F. Supp.2d 795, 812 (E.D. Mich. 2009) (and cases cited therein) ("Under *Stone, . . .* the correctness of the state courts' conclusions is simply irrelevant.").

The Sixth Circuit has stated that the second *Riley* inquiry is "not meant to be a case by case review of state court determinations," but rather "is a review of whether the state provided an adequate mechanism to address Petitioner's Fourth Amendment claims." *Abdul–Mateen v. Hofbauer,* No. 98–2323, 2000 WL 687653, at *3 (6th Cir. May 19, 2000). In *Abdul–Mateen,* the court recognized that an exception was carved out in *Riley* for "egregious error in the application of fourth amendment principles" amounting to a refusal by the state courts to consider or apply controlling Supreme Court precedents. *See id.* (quoting *Riley,* 674 F.2d at 526, in turn citing *Gamble v. Oklahoma,* 583 F.2d 1161 (10th Cir. 1978)). In *Riley,* the Sixth Circuit explained that when an "egregious error" of such "magnitude and nature" is present, as it was in *Gamble,* "a federal habeas court *might* be justified in concluding that an opportunity for a full and fair hearing had not been afforded the petitioner." *Riley,* 674 F.2d at 526 (emphasis added). In a subsequent decision, the Sixth Circuit rejected a petitioner's argument that an egregious misapplication of a controlling Supreme Court precedent also could justify such a conclusion. *Gilbert v. Parke,* 763 F.2d 821, 824 (6th Cir. 1985). The court reasoned: "This court in *Riley* declined to adopt the portion of *Gamble* permitting federal review of egregious substantive errors committed by state courts on Fourth Amendment claims. . . . Since the [state] courts provided Gilbert a full and fair opportunity to litigate his Fourth Amendment claims, second-guessing the [state] Supreme Court on the merits would be inconsistent with *Stone." Id.*

Here, as in *Gilbert,* the record does not reflect the magnitude or type of "egregious error" referred to in *Riley* as possibly justifying a finding that the opportunity for a full and fair hearing was thwarted. *Cf. Bergholz v. McMackin,* No. 89–3740, 1990 WL 223036, at *3 (6th Cir. Dec.

10

27, 1990) (per curiam) (in ruling that *Stone* foreclosed the petitioner's Fourth Amendment claim, the Sixth Circuit pointed out that "even if the state courts were in error in applying substantive law regarding 'seizures' under the Fourth Amendment, the state courts did not refuse to follow applicable precedent"). To the contrary, it appears clear from the record that petitioner was able to fully and fairly litigate his claim of a Fourth Amendment violation in the state courts.

Petitioner was permitted to raise his claims to the trial court though motions to suppress and the trial court held a hearing on the matter. (Doc. 11, Ex. 19). During the hearing, the trial court heard arguments from petitioner's counsel, as well as the testimony of Officer Bermerer, Deputy Boster and petitioner. Moreover, petitioner was able to challenge the trial court's ruling on direct appeal to the Ohio Court of Appeals and Ohio Supreme Court. (*See* Doc. 11, Ex. 13 & 17). As is set forth above, the Ohio Court of Appeals carefully considered petitioner's arguments and the applicable precedents in affirming the trial court's ruling. Although the Ohio Supreme Court declined jurisdiction to hear the case and summarily dismissed the appeal that followed the state appellate court's decision, it did so apparently because it was not persuaded by petitioner's memorandum in support of jurisdiction that the claims merited further consideration. (Doc. 11, Ex. 17).

After review of the entire record, the Court concludes that Ground One of the petition, challenging the denial of petitioner's motion to suppress evidence seized in violation of the Fourth Amendment, is barred from review under the Supreme Court's *Stone* decision.

Accordingly, in sum, petitioner is not entitled to habeas corpus relief and his habeas petition should be denied. Petitioner's sole ground for relief is not cognizable in federal habeas corpus. Therefore, it is **RECOMMENDED** that petitioner's petition for a writ of habeas corpus (Doc. 6) be **DENIED** with prejudice.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 6) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, which have been addressed on the merits herein, because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)). *See also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

  *s/ Stephanie K. Bowman*
  Stephanie K. Bowman
  United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

ULEMA ARRAZZAQ,
    Petitioner,

vs.

WARDEN, LONDON
CORRECTIONAL INSTITUTION,
    Respondent.

Case No. 1:13-cv-349

Dlott, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).